UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Plaintiff,<br><br>– against –<br><br>EQUITAS INSURANCE LIMITED,<br><br>Defendant. | Case No.  17-cv-6850<br><br>**COMPLAINT** |

Plaintiff The Insurance Company of the State of Pennsylvania ("ICSOP"), by its undersigned attorneys Chaffetz Lindsey LLP, for its Complaint against Defendant Equitas Insurance Limited ("EIL"), states as follows:

## NATURE OF THE ACTION

1. This action arises from EIL's breach of its obligations to pay amounts due under two facultative reinsurance contracts entered into between ICSOP and EIL's predecessors-in-interest, certain underwriters at Lloyd's of London.  Under these reinsurance contracts, the Lloyd's underwriters agreed to indemnify a portion of the losses paid by ICSOP under an umbrella insurance policy issued by ICSOP to Dole Food Company.  EIL, by agreement subject to court sanction in England, assumed the Lloyd's underwriters' non-life insurance and reinsurance obligations for years 1992 and prior, including the obligations under the reinsurance contracts at issue here.

2. Although ICSOP paid premiums for coverage under these reinsurance contracts, and

despite the fact that ICSOP has paid $20 million in losses under the reinsured policy, EIL has refused to pay its share of the loss as obligated under the reinsurance contracts.

3. ICSOP brings this action for breach of contract in order to recover the amounts due and other relief to which ICSOP may be entitled.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this action is between a citizen of a U.S. state and the citizen of a foreign state, and the amount in controversy exceeds $75,000. Plaintiff, as a corporation organized under the laws of Illinois with its principal place of business in New York, is considered a citizen of the states of Illinois and New York for purposes of diversity jurisdiction. Defendant, a corporation organized under the laws of England, is a citizen of England.

5. This court has personal jurisdiction over defendant EIL because EIL has consented to this court's jurisdiction through a "service of suit" clause contained in each of the reinsurance contracts at issue. That clause provides, in pertinent part, that EIL "will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court."

6. Venue is proper in this district pursuant to the aforementioned "service of suit" clause in the parties' contracts. In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(c) because defendant EIL is subject to personal jurisdiction in this district.

## NOTICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 44.1

7. Pursuant to Rule 44.1, ICOSP hereby gives notice that it intends to raise an issue about a foreign country's law, including, but not necessarily limited to, the fact that the reinsurance contracts at issue in this action are governed by English law.

## THE PARTIES

8. ICSOP is an insurance company organized and existing under the laws of the State of Illinois, with its principal place of business in New York, New York. Since 1969, it has been a wholly-owned member of the American International Group of Insurance Companies.

9. Upon information and belief, EIL is a corporation registered in England and Wales with its registered office in London, England. Pursuant to a transaction approved by the English High Court of Justice on or about June 30, 2009, EIL has assumed all of the obligations with respect to the reinsurance contracts that are the subject of this action.

## FACTS

### A. The Underlying Insurance Policy Issued by ICSOP

10. ICSOP issued Policy 418-4200 to Castle & Cooke, Inc., now Dole Food Company, Inc. (hereafter referred to as "Dole"), which covered the policy period October 1, 1968 to October 1, 1971 (the "Dole Umbrella Policy").

11. Under the Dole Umbrella Policy, ICSOP agreed to insure Dole against amounts Dole became obligated to pay on account of claims for personal injuries and property damage, arising out of an occurrence that took place during the policy period, to the extent those amounts exceeded the limits of other insurance policies providing coverage to Dole during the same period. The Dole Umbrella Policy had a limit of $20 million per occurrence.

### B. ICSOP Purchases Reinsurance for the Dole Umbrella Policy from Underwriters at Lloyd's of London

12. Under a contract of reinsurance, an insurer transfers to a reinsurer some or all of the risk that the insurer has assumed under one or more insurance policies. The reinsurer is paid a premium in accordance with the terms of the reinsurance contract. The original insurer is often referred to as the "cedent," or "ceding company" and is said to "cede" risk and premium to the

reinsurer.

13. The reinsurance contracts at issue here are known as "facultative" contracts. Under a contract of facultative reinsurance, the reinsurer agrees to share in the premium and risk associated with a specifically-identified policy, usually for a single policyholder. (Facultative reinsurance stands in contrast to "treaty" reinsurance, which provides protection for a group or class of policies that meet certain specified requirements).

14. Central to the reinsurance relationship is the doctrine of "follow-the-settlements" (which is closely related to and sometimes referred as "follow-the-fortunes"). This doctrine facilitates the payment of claims by insurance companies by fostering consistency in the treatment of losses under the underlying policy and the reinsurance contracts that share in the same risk by requiring a reinsurer to accept and follow the cedent's good faith settlement of claims against reinsured policies. Thus, the follow-the-fortunes principle obligates a reinsurer to indemnify the cedent for payments reasonably within the terms of the original policy, even if technically not covered by it. The reinsurer may not relitigate coverage defenses which were or may have been raised in the underlying coverage dispute. In this case, the reinsurance contracts contain an express provision requiring the reinsurers to "follow the settlements" of the cedent.

15. ICSOP purchased two certificates of facultative reinsurance for the Dole Umbrella Policy from certain underwriters at Lloyd's of London protecting two different layers of the Dole Umbrella Policy. Under the contract no. 8063343, the Lloyd's underwriters agreed to reinsure 92.91% of 75% of the first $5 million in losses per occurrence under the Dole Umbrella Policy (the "First Layer Facultative Certificate"). In other words, under the First Layer Facultative Certificate, the Lloyd's underwriters agreed to indemnify ICSOP for $3,484,125 of the first $5,000,000 in payments made under the Dole Umbrella Policy for any one occurrence.

16. Under contract no. 8063344, the subscribing underwriters agreed to provide "excess" reinsurance of 25% of $15 million excess of $5 million for each occurrence (the "Second Layer Facultative Certificate"). Thus, to the extent ICSOP paid amounts in excess of $5 million for any one occurrence under the Dole Umbrella Policy, the underwriters would indemnify ICSOP 25% of such payments until such payments totaled $15 million. For any occurrence for which ICSOP paid $20 million total, the underwriters of the Second Layer Facultative Certificate would indemnify ICSOP $3,750,000.

17. Pursuant to both contracts, the underwriters promised "to pay or make good to [ICSOP] all such loss as herein provided, *such payment to be made within seven days after such loss is proved*" (emphasis added). Thus, the underwriters were obligated to pay claims within seven days of receiving proof that ICSOP had paid a covered loss under the Dole Umbrella Policy.

    C.    **EIL Assumes All Pre-1993 Non-life Insurance and Reinsurance Obligations of Underwriters at Lloyd's of London, Including the Reinsurance Contracts Covering the Dole Umbrella Policy**

18. For most of its history, Lloyd's of London was an insurance and reinsurance market through which thousands of individuals known as "Names" underwrote and sold insurance and reinsurance coverage. Although an entity known as the "Corporation of Lloyd's" oversaw and supported the Lloyd's market, it was not a risk-bearing entity. Instead, the individual Names were organized into syndicates, through which they shared in the premium and risk under insurance and reinsurance contracts underwritten by professional managers employed by the syndicates.

19. In the 1980s soaring mass tort liabilities arising from asbestos, environmental and other exposures on U.S. risks started to produce huge losses that vastly exceeded the syndicates' premium and interest income. These snowballing claims threatened to overwhelm the resources

of the individual Names who participated in the syndicates. That, in turn, threatened the continued viability of Lloyd's itself.

20. The creation of Defendant EIL and its assumption in 2009 of 100% of the rights, obligations and liabilities of Lloyd's Names on 1992 and prior years business was the culmination of a series of steps that were taken to resolve the solvency crisis of the Lloyd's Names and to preserve Lloyd's as an ongoing insurance and reinsurance market.

21. Ultimately, EIL assumed 100% of the rights, obligations, and liabilities of Lloyd's Names for 1992 and prior years pursuant to a "Part VII Transfer" – a statutory procedure under the United Kingdom's Financial Services and Markets Act of 2000 that permits the novation of insurance and reinsurance contracts from their original issuer to a successor entity. The Part VII Transfer proceeded in two stages. First, pursuant to a document referred to as the "Scheme," the Names agreed to transfer, and EIL agreed to accept, all of the Names' rights, obligations, and liabilities arising from 1992 and prior years' non-life insurance and reinsurance policies. Second, once the economic terms of the Scheme were agreed between the Names and EIL, those terms were approved by the High Court in London. The High Court approved the transfer of the Names' business to EIL on June 30, 2009.

22. In connection with EIL's assumption of the Lloyd's Names' business, National Indemnity Company (a Berkshire Hathaway company) ("NICO") reinsured the Lloyd's business assumed by EIL. In connection with that transaction, NICO took over claims management for the 1992 and prior Lloyd's portfolio through its affiliate, Resolute Management Services Limited ("RMSL").

23. At all times since the approval of the Part VII Transfer, RMSL has handled ICSOP's reinsurance claims on behalf of EIL, including the claims at issue in this case.

**D.    ICSOP Makes Payments to Dole Under the Dole Umbrella Policy**

24.   The underlying loss under the Dole Umbrella Policy arises out of the residential real estate development activities of Dole's subsidiary, Barclay Hollander Corp. ("BHC"). In 1966, BCH's predecessor purchased a tract of land in Carson, California from Shell Oil Corp. ("Shell"). Prior to the sale, Shell had used the tract as an oil and petroleum containment facility, where it warehoused mass quantities of oil and petroleum in large storage tanks.

25.   Following the purchase, BCH demolished the storage facilities and developed the Carousel Housing Development, consisting of 175 single family residences, which it sold to private homeowners. In May 2008 the California Department of Toxic Substance Control detected petroleum hydrocarbons in the soil and groundwater of the housing development. In 2009, approximately 1500 plaintiffs filed suit in three separate actions (the "Homeowners Litigation") against Shell Oil and Dole and its subsidiaries alleging bodily injury, property damage, and other injuries cause by their alleged exposure while living in the Carousel Housing Development and/or surrounding areas to hazardous chemicals left behind from Shell's previous use of the site as a petroleum storage facility.

26.   In 2011, the Los Angeles Regional Water Board issued a Cleanup and Abatement Order requiring Shell to assess, monitor, and remove contamination at the Carousel site. In January 2013, the City of Carson brought suit against Dole, BCH and Shell seeking damages for public nuisance, inverse condemnation and remediation of the contamination at the site (the "City of Carson Litigation").

27.   In May 2014, Shell commenced an action against Dole and BCH seeking indemnification for amounts paid in connection with the Carousel development based on an alleged letter agreement between Shell and BCH's predecessor executed in 1965 in connection with the sale of the property. In April 2015, the Water Board issued a revised Cleanup and

Abatement Order naming BCH as an additional "discharger," responsible for the cleanup and abatement of contaminants at the Carousel site.

28. In August 2016, Dole and its insurers entered into a settlement agreement resolving Dole's claims for insurance coverage under its insurance policies (the "Dole Settlement"), including the Dole Umbrella Policy issued by ICSOP, which provided that Dole's insurers would provide funding towards a settlement agreement reached between Dole and the plaintiffs in the Homeowners Litigation. Pursuant to that settlement agreement, ICSOP was required to pay $20 million towards Dole's settlement of the Homeowners Litigation.

      **E.**      **ICSOP Seeks Reinsurance Proceeds Under the First and Second Layer Facultative Certificates from EIL, But EIL Refuses to Pay**

29. As ICSOP has paid $20 million under the Dole Umbrella Policy pursuant to the Dole Settlement, ICSOP is entitled to indemnification from EIL under the First and Second Layer Facultative Certificates in the total amount of $7,234,125. This includes $3,484,125 under the First Layer Reinsurance Certificate – equal to 92.91% of 75% of the first $5 million paid by ICSOP – and $3,750,000 under the Second Layer Facultative Certificate – equal to 25% of the $15 million ICSOP paid in excess of $5 million.

30. On October 25, 2016, ICSOP provided proof of loss, that is confirmation of its payment to the policyholder, to RMSL, EIL's designated claims handler in England. EIL, however, has refused to indemnify ISCOP for the payments made under the Dole Umbrella Policy, as required by the First and Second Layer Facultative Certificates. Accordingly, ISCOP now brings this action to recover the amounts due to it under these reinsurance contracts.

**COUNT I**
**BREACH OF CONTRACT**
**(First Layer Facultative Certificate)**

31. ICSOP repeats and incorporates by reference the allegations set forth in paragraphs 1

to 30 above as though fully set forth herein.

32.   The First Layer Facultative Certificate creates binding and enforceable contractual obligations.

33.   ICSOP has paid all premiums due and satisfied all other obligations and conditions under the First Layer Facultative Certificate.

34.   ICSOP has paid losses and other expenses that are covered under the First Layer Facultative Certificate.

35.   In breach of the First Layer Facultative Certificate, EIL failed to indemnify ICSOP for its share of amounts paid by ICSOP under the Dole Umbrella Policy and presented to EIL.

36.   ICSOP has been damaged by EIL's breach of the First Layer Facultative Certificate in an amount to be determined at trial, but not less than $3,484,125 , plus interest.

### COUNT II
### BREACH OF CONTRACT
### (Second Layer Facultative Certificate)

37.   ICSOP repeats and incorporates by reference the allegations set forth in paragraphs 1 to 30 above as though fully set forth herein.

38.   The Second Layer Facultative Certificate creates binding and enforceable contractual obligations.

39.   ICSOP has paid all premiums due and satisfied all other obligations and conditions under the Second Layer Facultative Certificate.

40.   ICSOP has paid losses and other expenses that are covered under the Second Layer Facultative Certificate.

41.   In breach of the Second Layer Facultative Certificate, EIL failed to indemnify ICSOP for its share of amounts paid by ICSOP under the Dole Umbrella Policy and presented to EIL.

42. ICSOP has been damaged by EIL's breach of the Second Layer Facultative Certificate in an amount to be determined at trial, but not less than $3,750,000, plus interest.

## **CONCLUSION**

WHEREFORE, ICSOP respectfully requests that this Court enter judgment as follows:

(i) On Count I, judgment against defendant EIL in an amount to be determined at trial, but not less than $3,484,125, plus interest;

(ii) On Count II, judgment against defendant EIL in an amount to be determined at trial, but not less than $3,750,000, plus interest;

(iii) Granting ICSOP such other further relief as may be just and proper.

Dated:   New York, New York
September 8, 2017

Respectfully submitted:

**CHAFFETZ LINDSEY LLP**

By:   /s/ Peter R. Chaffetz

Peter R. Chaffetz
Andrew L. Poplinger
1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
Fax. (212) 257-6950
p.chaffetz@chaffetzlindsey.com
a.poplinger@chaffetzlindsey.com

*Counsel for Plaintiff The Insurance Company of the State of Pennsylvania*