UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,

      Plaintiff,

  -v-                                                                     No. 17 CV 6850-LTS-SLC

EQUITAS INSURANCE LIMITED,

      Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiff The Insurance Company of the State of Pennsylvania ("ICSOP") brings this action for breach of reinsurance policies against Defendant Equitas Insurance Limited ("EIL"). Before the Court are cross-motions for summary judgment filed by each of the parties. (See docket entry nos. 24 and 30.) The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332. The Court has considered carefully all of the parties' submissions. For the reasons stated below, ICSOP's motion for summary judgment is granted in its entirety. EIL's motion for summary judgment is denied in its entirety.

BACKGROUND

        Unless otherwise indicated, the following facts are undisputed.[1] ICSOP is an insurance company organized under the laws of the State of Illinois, with its principal place of

---

[1] Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("ICSOP 56.1 St." or "EIL 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

business in New York.  (Docket entry no. 1, Complaint ("Compl."), at ¶ 1, 8.)  ICSOP is a wholly-owned member company of the American International Group ("AIG").  (Id. at ¶ 8.)  EIL is a corporation registered in England and Wales.  (Id. at ¶ 9.)

ICSOP issued an umbrella liability insurance policy providing third-party liability coverage (the "ICSOP-Dole Policy") to Castle & Cook, Inc. (now Dole Food Company, "Dole"), for losses exceeding the limits of an underlying policy.  (Docket entry no. 26, ICSOP 56.1 St. ¶ 1; docket entry no. 32, EIL 56.1 St. ¶ 4.)  The ICSOP-Dole Policy had a stated coverage period of October 1, 1968, to October 1, 1971, and a limit of $20,000,000.  (EIL 56.1 St. ¶ 4.)  The policy covered liability for, among other things, "property damage, caused by or arising out of each occurrence happening during the policy period."  (Docket entry no. 27, Declaration of Andrew Engel in Support of Plaintiff's Motion for Summary Judgment ("Engel Decl."), at Ex. A.)  The ICSOP-Dole Policy did not contain a pollution exclusion, which would have "exclude[d] coverage for environmental liabilities caused by the discharge or dispersal of contaminants or pollutants."  (EIL 56.1 St. ¶ 5; docket entry no. 25 Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("ICSOP Memo. of Law"), at 6, n. 5.)  Disputes under the policy were to be litigated in accordance with the laws of the State of Hawaii.  (EIL 56.1 St. ¶ 6.)

AIG obtained facultative[2] reinsurance for the ICSOP-Dole Policy from certain underwriters at Lloyd's of London ("Lloyd's Underwriters"), who agreed to reinsure the ICSOP-Dole Policy in two layers (the relevant reinsurance policies being referred to collectively herein

---

[2]   "There are two types of reinsurance, facultative and treaty. In facultative reinsurance, a ceding insurer purchases reinsurance for part, or all, of a single policy.  Treaty reinsurance covers specified classes of a ceding insurer's policies."  Unigard Sec. Ins. Co. Inc. v. N. River Ins. Co., 4 F.3d 1049, 1053-54 (2d Cir. 1993).

as the "Reinsurance Policies"). (EIL 56.1 St. ¶ 7-8.) In 2009, upon a transfer under U.K. law to EIL of the rights and responsibilities of the Lloyd's Underwriters, EIL assumed the reinsurance obligations under the Reinsurance Policies. (Docket entry no. 31, Memorandum of Law of Equitas Insurance Limited in Support of Its Motion for Summary Judgment ("EIL Memo. of Law"), at 1.) Together, the Reinsurance Policies reinsured the ICSOP-Dole Policy in the total amount of $7,234,125 per each $20 million per occurrence limit. (ICSOP 56.1 St. ¶ 2.) The Reinsurance Policies provided coverage between October 1, 1968, and October 1, 1971, which comprised the same policy period provided for by the ICSOP-Dole Policy, and were drafted on a standard "Lloyd's Reinsurance Policy" Form J1. (EIL 56.1 St. ¶ 9-10.) The "Schedule" in the Reinsurance Policies provided that the "[p]erils and interests reinsured hereunder" would be "[a]s original." (Docket entry no. 28, Declaration of Chris Magnotta in Support of Plaintiff's Motion for Summary Judgment ("Magnotta Decl."), Ex. A at ICSOP 020610, Ex. B at ICSOP 020625.) The Reinsurance Policies contained a "follow-the-settlements" provision, which required EIL to indemnify ICSOP for the covered settlements it paid under the ICSOP-Dole Policy. (Magnotta Decl., Ex. A at ICSOP 020608, Ex. B at ICSOP 020623.) The Reinsurance Policies also contained a notice provision, which stated that "immediate notice should be given" in the event of any occurrence likely to result in a claim under the Reinsurance Policies. (Docket entry no. 33, Declaration of Sean Thomas Keely In Support of Motion by EIL For Summary Judgment ("Keely Decl."), at Exs. 4-5.) The notice provision did not state whom notice should be given to.

In 1966, a Dole subsidiary acquired and developed a housing tract on a property in Carson, California. (EIL 56.1 ¶ 12.) In May 2008, the California Department of Toxic Substance Control found hazardous levels of petroleum hydrocarbons in the soil and

groundwater at the site. (EIL 56.1 ¶ 13.) The pollution had been progressive from the initial development of the Carson site in 1966 until its discovery. (EIL 56.1 ¶ 55.) As a result, in October 2009, homeowners sued Dole to recover for damages caused by the environmental pollution ("Carson Claims"). (EIL 56.1 ¶ 14.) In 2009, Dole gave notice of the Carson Claims under all of its available policies issued by AIG Companies, including the ICSOP-Dole Policy. (EIL 56.1 ¶ 15-16.) As a result, in late 2009, AIG opened a file and claim number for Dole's claim and wrote to Dole's broker acknowledging receipt of the claim. (EIL 56.1 ¶ 18.) In May 2010, AIG sent Dole a letter acknowledging the tender of the Carson Claims under all AIG policies and reserving AIG's rights regarding coverage under the policies. (EIL 56.1 ¶ 21.) In this letter, AIG also informed Dole that all of AIG's primary policies contained pollution exclusions, and that the only umbrella policy that did not contain a pollution exclusion was the ICSOP-Dole Policy. (EIL 56.1 ¶ 25; docket entry no. 33, Keely Decl. Ex. 1.) On November 2, 2015, AIG provided EIL's representatives with notice of the Carson Claims. (EIL 56.1 ¶ 51.)

In September 2016, Dole and its insurers reached a $30 million settlement agreement under which AIG agreed to pay the full $20 million limit of the ICSOP-Dole Policy. (EIL 56.1 ¶ 58; see also Keely Decl. Ex. 21 at ICSOP017737.) This allocation was based on the "all sums" doctrine. (EIL 56.1 ¶ 54.)[3] After paying the $20 million settlement to Dole under the ICSOP-Dole Policy, ICSOP billed EIL for the reinsured portion of the loss, which totaled more than $7.2 million. (EIL 56.1 ¶ 60.) EIL refused to indemnify ICSOP under the Reinsurance Policies. (ICSOP 56.1 ¶ 8.)

---

[3] As explained below, the "all sums" doctrine, applied in insurance coverage cases arising from environmental damage that occurs over a lengthy period of time, permits the allocation of liability for the whole of the damage to any insurance policy that covered the risk during any period in which any part of the damage occurred.

DISCUSSION

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citation omitted).

ICSOP's Claim for Indemnification

The parties agree that English law governs the Reinsurance Policies in this case.[4] Furthermore, there is no genuine dispute as to any material fact with respect to ICSOP's claim for indemnification under the Reinsurance Policies, including the circumstances concerning the underlying property damage giving rise to the Carson Claims, the settlement paid under the ICSOP-Dole Policy, and ICSOP's allocation of loss to EIL under the Reinsurance Policies. Accordingly, the issue before the Court is whether the Reinsurance Policies obligate EIL to indemnify ICSOP for the $20 million settlement ICSOP paid under the ICSOP-Dole Policy for the Carson Claims notwithstanding the three-year stated policy period of each of the Reinsurance Policies.

Where a reinsurance contract contains a "follow-the-settlements" provision, "reinsurers agree to indemnify insurers in the event that they settle a claim by their assured."

---

[4] The Court applies English law in this case by considering and interpreting decisions issued by the House of Lords and lower English judicial bodies. The Court notes that decisions of the House of Lords are delivered in separate speeches or opinions by the members of the panel of Lords. Pursuant to Fed. R. Civ. P. 44.1, the Court has also considered the parties' proffers of expert opinions on the relevant English law.

The Insurance Company of Africa v Scor UK, [1985] 1 Lloyd's Rep 312 at 330, per Goff LJ. Under English law, settlements paid under the reinsured policy are presumed to be covered as a matter of law by the reinsurance policy if the reinsured can prove: 1) that the reinsured has actually paid the settlement sums, and 2) that the claim arguably falls within the insurance/reinsurance policy under which the payment was made as a matter of law.  See docket entry no. 29, Plaintiff's Expert Report of David W.J. Scorey, QC ("Scorey Report"), at ¶¶ 34-37. Accordingly, a reinsurer can refuse to follow the reinsured's settlement if or to the extent that the claim that was settled falls outside of the legal scope of the cover.  See docket entry no. 44, Expert Report on English Law of Alistair Schaff Q.C. ("Schaff Rep."), at ¶ 20.

In determining the legal scope of cover under a reinsurance policy, English law applies a strong presumption in favor of "back-to-back" coverage, which means that "liability under a proportional facultative reinsurance [policy] is co-extensive with the [underlying] insurance [policy.]"  Wasa International Insurance Co. Ltd. v. Lexington Insurance Co. [2010] 1 AC 210 ("Wasa"), at [116] per Lord Collins of Mapesbury ("Lord Collins"); see also Forsikringsaktieselskapet Vesta v. Butcher [1989] AC 852 at 895 ("Vesta"), per Lord Griffiths (back-to-back coverage means "the reinsurer agrees that if the insurer is liable under the [reinsured] policy the reinsurer will accept liability to pay whatever percentage of the claim he has agreed to reinsure."); Scorey Report at ¶¶ 23-24 (citing Groupama Navigation et Transport v. Catatumbo Seguros [2000] CLC 1534 at [26-27] ("Catatumbo"), per Tuckley LJ).  Where a reinsured has sufficiently proven that it is entitled to indemnification, the burden shifts to the reinsurer to prove otherwise, "including any allegation that the reinsured did not act in an honest and businesslike manner."  Id. at ¶ 34 (discussing Charman v. Guardian Royal Exchange Assurance PLC, [1992] 2 Lloyd's Rep. 607 at p. 613).

ICSOP submits that EIL is obligated to indemnify ICSOP for its $20 million settlement payment to Dole for over 44 years of continuous environmental pollution under the ICSOP-Dole Policy, as mandated by Hawaii's adoption of the "all sums" principle, notwithstanding the three-year stated term of the Reinsurance Policies.  ICSOP argues that the parties intended the Reinsurance Policies to provide co-extensive coverage, and that the follow-the-settlements provision in the Reinsurance Policies obligates EIL to pay any settlement that falls within the terms of the ICSOP-Dole Policy.  Accordingly, ICSOP contends that EIL must honor Hawaii's adoption of the "all sums" doctrine under which ICSOP reached its settlement with Dole.  As support, ICSOP relies on Vesta and Catatumbo, two English cases that stand for the proposition that, where an insurance contract and reinsurance contract contain, or incorporate, the same or similar language, but are governed by different laws, the reinsurance contract is presumed to have the same effect as the underlying insurance contract.

In Vesta, the dispute concerned insurance of a fish farm in Norway where the underlying insurance and reinsurance policies contained a warranty that a 24-hour watch would be kept over the farm.  Vesta at 890-91.  The watch was not kept, but the farm was damaged by a storm.  Id. at 891.  The underlying policy was governed by Norwegian law and the reinsurance policy was governed by English law.  Id.  With respect to the insurance company's obligations, the Vesta Court found that, even though the breach of warranty was unrelated to the loss, Norwegian law obligated Vesta to honor the underlying insurance policy.  Id. at 891-93.  With regard to the reinsurer's responsibility, the court found that "[u]nder English law, which governed the reinsurance policy issued by the underwriters to Vesta, the breach of warranty, whether relevant to the loss or not, rendered the reinsurance policy null and void." Id. at 891.  Nevertheless, the House of Lords rejected the reinsurers' claim that they were "entitled to rely

upon the breach . . . to refuse to pay under the reinsurance policy." Id. at 894 per Lord Griffiths. The House of Lords held that, to uphold the parties' contractual intent, the legal effect under the foreign law of the underlying insurance policy must be given to all clauses which define and limit the scope of the cover, regardless of what the law governing the reinsurance policy mandates. Id. at 903. Therefore, the Vesta court held that "in the absence of any express statement to the contrary in the reinsurance policy, a warranty must produce the same effect in both the insurance and the reinsurance policy." Vesta, at 853; see also, Catatumbo, at 11, 20 per Tuckley LJ (holding that, where a non-causative breach of warranty did not exonerate an insurer under Venezuelan law, the reinsurers were liable under the reinsurance contracts, which were governed by English law, as well).

Liability under a reinsurance policy is ultimately dependent on a question of construction of that policy against its relevant background and surrounding circumstances to determine what risks the policy was intended to cover. Wasa at ¶ 44 per Lord Mance. Where there is a mismatch of the law governing identical provisions in both the underlying insurance policy and the reinsurance policy—such as the stated policy periods, follow-the-settlements clauses, and provisions providing for risks to be covered on an "as original" basis—Vesta and Catatumbo teach that the parties under the reinsurance policy are to be understood to have intended the reinsurance coverage to be coterminous, i.e., "back-to-back" with that of the reinsured policy.

EIL, on the other hand, argues that the temporal term in a contract is fundamental under English law and that holding EIL liable for the all sums settlement would be to expand the coverage of the Reinsurance Policies beyond what the parties contemplated at the time of contracting, and such a result cannot be accomplished through application of the presumption in

favor of back-to-back coverage. For support, EIL primarily relies on Wasa, a House of Lords decision arising from circumstances strikingly similar to those of the instant case. In Wasa, Lexington Insurance Company ("Lexington") had issued a three-year policy, from July 1, 1977, through July 1, 1980, to Aluminum Company of America ("Alcoa") with a limit of $20 million for each occurrence ("Lexington-Alcoa Policy"). Id. at ¶18. Lexington reinsured the policy with two London reinsurers, Wasa International Insurance Company Limited ("Wasa") and AGF Insurance Limited (AGF). Id. The reinsurance policy was drafted using the same standard Lloyd's Form J1 that was used to reinsure the ICSOP-Dole Policy and contained a follow-the-settlements provision identical to that in the Reinsurance Policies. Id. at ¶¶ 20-21. The reinsurance policy period in Wasa was also the same three-year period as the underlying Lexington-Alcoa Policy. Id. at ¶¶ 19-20.

Alcoa, like Dole, faced liability for environmental damages at a number of sites spanning 44 years. Id. at ¶¶ 12, 19. As a result, Alcoa sought coverage for those environmental losses from its insurer Lexington; Alcoa brought suit in Washington State pursuant to a provision permitting the commencement of suit in "any court of competent jurisdiction within the United States." Id. at 19. Because the Lexington-Alcoa Policy did not specify what law would govern the contract, the Washington court applied conflict of law principles and, based on Alcoa's corporate situs, ultimately decided that Pennsylvania law governed the many insurance policies under which Alcoa asserted its environmental claims. Id. at ¶¶ 25-26. Under Pennsylvania law, the Washington court held that Lexington was liable, on an "all sums" basis, up to its policy limits for the costs of damage occurring during the entire 44-year period over which pollution damage occurred. Id. at ¶ 13.

Lexington subsequently brought suit against its reinsurers in the U.K., seeking indemnity under Lexington's reinsurance policies, which were governed by English law. In Wasa, the House of Lords distinguished its prior decision in Vesta, finding the back-to-back presumption inapplicable, and instead gave effect to the English reinsurance policy's temporal term notwithstanding an "all sums" coverage determination under the underlying insurance policy, which was found to be governed by Pennsylvania law. See Wasa at ¶ 116. However, the House of Lords' decision in Wasa does not compel a decision in EIL's favor here because the Wasa decision hinged on the reinsurers' inability to predict what law would govern the underlying insurance contract as a result of the complete absence of a choice of law provision in the Lexington-Alcoa Policy. As Lord Collins explained in Wasa, the back-to-back presumption reflects "commercial common sense"; it would be unusual for an insurer to purchase facultative reinsurance that was not back-to-back, and it is unlikely that there is "any market for such a reinsurance." Id. at ¶¶ 60-62. Wasa recognized, however, that an exception to the presumption is warranted where "it was [not] possible at the time when the insurance and reinsurance were placed to identify the foreign law which would govern the insurance." Id. at ¶ 44 per Lord Mance; see ¶¶ 108-112 per Lord Collins. Therefore, because there was "no identifiable legal dictionary" or "system of law applicable to the insurance contract" when the insurance and reinsurance contracts at issue in Wasa were concluded, the parties to the reinsurance contract could not have had a "basis for construing the contract of reinsurance in a manner different from its ordinary meaning in the London insurance market." Id. at ¶ 108 per Lord Collins. On this basis, the House of Lords in Wasa gave effect to the temporal provision in Lexington's reinsurance policy because English law does not recognize or permit recovery under the "all sums" doctrine. See Id. at ¶¶ 111 per Lord Collins ("[T]here is no principled basis for treating

the scope of the three-year reinsurance as the same as the insurance, which has been interpreted under the law of Pennsylvania not to contain any 'limitation as to time of the physical loss or damage to property'").[5] As ICSOP correctly notes, Wasa did not hold that the fundamental nature of a temporal term in a reinsurance policy under English law necessarily trumps the strong presumption in favor of back-to-back coverage in proportional facultative reinsurance contracts that Vesta recognized

Here, the facts underlying the parties' dispute do not warrant an application of the Wasa exception to the strong presumption in favor of back-to-back coverage under English law. At the time of contracting, ICSOP and EIL's decision to enter into the Reinsurance Policies gave rise to the presumption that they intended the Reinsurance Policies to provide back-to-back coverage with the ICSOP-Dole Policy. ICSOP and EIL were both aware that the ICSOP-Dole Policy was governed under the laws of the State of Hawaii, and therefore accepted the risk of new developments under Hawaii law, including Hawaii's later adoption of the "all sums" doctrine. See Wasa at ¶ 108 per Lord Collins. Accordingly, because the policies are back-to-back and the reinsurance terms are deemed to have the same effect as they would have under Hawaii law, both ICSOP and EIL assumed the risk that ICSOP could be held liable under the ICSOP-Dole Policy on an "all sums" basis for a continuous injury occurring outside of the ICSOP-Dole Policy period, and that EIL would have to indemnify ICSOP for any settlement it was required to pay Dole as a result of the injury under the follow-the-settlements provision in the Reinsurance Policies.[6] The mere fact that English law governs the Reinsurance Policies,

---

[5] Lord Collins' reasoning was adopted by each of the four Lords who delivered speeches in Wasa.

[6] AIG has not challenged ICSOP's representations that it was legally obligated to pay the settlement and that it did, in fact, pay the settlement to Dole.

including their stated policy periods of three years, is not sufficient to overcome the presumption English law applies in favor of back-to-back coverage and does not excuse EIL's obligation to indemnify ICSOP under the law governing the ICSOP-Dole Policy.  For these reasons, ICSOP is entitled to indemnification from EIL for its reinsured share of the settlement paid under the ICSOP-Dole Policy.

EIL's Late Notice Defense

EIL argues that it may nonetheless be relieved of any payment obligation, moving for partial summary judgment on the issue of whether EIL is entitled to a remedy at law of repudiation or avoidance of the Reinsurance Policies that would EIL from any liability for the Carson Claims.  EIL argues that ICSOP breached its notice obligations under the Reinsurance Policies by providing notice of the Carson Claims nearly six years after ICSOP first became aware of an occurrence likely to result in a claim under the policies.  EIL asks the Court to make a determination regarding ICSOP's breach of the notice provisions as a matter of law at this juncture, and allow it to prove at trial that ICSOP's breach was in bad faith and went to the root of the parties' contractual relationship.

EIL's expert, Mr. Schaff, submits that "the juridicial availability of the right to terminate for a breach of a notice clause which does (on extreme facts) go to the root of the contract is established."  Schaff Rep. at ¶ 70.  However, Mr. Schaff acknowledges that it is unclear what "extreme facts" would suffice to trigger the remedy, and that there is "no case in which it has been so held."  Id. at ¶ 63.  Nevertheless, Mr. Schaff opines that EIL could, under English law, repudiate the Reinsurance Policies in their entirety "if the facts found supported the extreme case of dishonest non-notification as alleged by [EIL] and if serious prejudice to [EIL] were established in consequence thereof."  Id. at ¶ 76.  Alternatively, EIL suggests that, should

the Court have any doubt regarding the availability of EIL's desired remedy under English law, the Court should apply New York law, which recognizes that "a reinsured's failure to provide prompt notice may entitle the reinsurer to relief without showing prejudice if the reinsured acted in bad faith." Christiana Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co., 979 F.2d 268, 281 (2d Cir. 1992).

The Court need not address whether the remedy is available to EIL as a matter of law because, even assuming, arguendo, that the remedy is available, EIL has failed to meet its burden under Fed. R. Civ. P. 56 to adduce evidence from which a finder of fact could infer that ICSOP acted with "extreme dishonesty" such that EIL may have been "seriously prejudiced"[7] under English law, or that ICSOP acted in "bad faith" under New York law. As a result, no genuine dispute as to material fact exists with respect to EIL's claims regarding ICSOP's allegedly dishonest breach of the late notice provision and there would be no basis for a trial of those issues. Accordingly, EIL is not entitled to partial summary judgment, which would be merely advisory in the current circumstances, on its late notice defense and ICSOP is entitled as a matter of law to summary judgment on its claims under the Reinsurance Policies.

## CONCLUSION

For the foregoing reasons, ICSOP's motion for summary judgment is granted in its entirety. Plaintiff will recover $7,234,125 plus pre-judgment interest from the date upon

---

[7] EIL provides no authority as to what degree of harm would be required to show "serious prejudice" under English law. Accordingly, ICSOP suggests the Court may apply the New York law standard of tangible economic injury. See docket entry no. 46 at 10. Under the New York standard, the Court finds EIL has not proffered facts sufficient to demonstrate it suffered serious prejudice where EIL had no legal right to affect the ICSOP-Dole settlement. See Unigard Sec. Ins. Co. Inc. v. North River Ins. Co., 4 F.3d 1049, 1069 (2d Cir. 1993) (reinsurer's loss of the contractual right to associate in claims handling as a result of late notice did not constitute tangible economic injury absent evidence that its participation would have affected the underlying settlement).

which payment was due.  EIL's motion for summary judgment is denied in its entirety.  Plaintiff is directed to file a proposed judgment, together with an affidavit specifying the date from which pre-judgment interest is demanded and the facts supporting the use of such date, and a memorandum of law identifying the interest rate requested and the legal basis for use of such rate, within 14 days from the date of this Memorandum Opinion and Order.  Any opposition to the form of the proposed judgment or the pre-judgment interest provisions shall be filed within seven days of the filing of the proposed order and supporting documents, and any reply must be filed within seven days of the filing of the opposition.

The final pretrial conference currently scheduled for August 7, 2020, is cancelled.  This Memorandum Opinion and Order resolves docket entry nos. 24 and 30.

SO ORDERED.

Dated: New York, New York
       July 16, 2020

    /s/ Laura Taylor Swain
   LAURA TAYLOR SWAIN
   United States District Judge